**Original filed 2/14/07**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARTIN W. SMYKLA, | ) | No. C 01-20991 JF (PR) |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) | |
| SHERIFF HENNESSEY, Et al., | ) | (Docket Nos. 19, 21) |
| Defendants. | ) | |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint under 42 U.S.C. § 1983, which the Court dismissed with leave to amend. Plaintiff then filed an amended complaint, and the Court ordered service of Plaintiff's one cognizable claim against Defendant Dr. Vivas at the San Francisco County Jail (SFCJ), for deliberate indifference to Plaintiff's serious medical needs (docket no. 17). Dr. Vivas has filed a motion for summary judgment (docket no. 21). Plaintiff, although granted an opportunity to file an opposition, has not done so. For the reasons discussed below, the Court grants the motion for summary judgment.

**BACKGROUND**

In his amended complaint, Plaintiff alleges that for fourteen months, from May

Order Granting Defendant's Motion for Summary Judgment
P:\pro-se\sj.jf\cr.01\Smykla991.MSJ.Grant.ECK

2001 through July 2002, Dr. Vivas of the SFCJ acted with deliberate indifference to his serious medical needs by failing to provide him with prompt and appropriate care for a sinus infection. He states that by the time he was sent to the hospital to see a doctor on June 28, 2002, his sinuses were so impacted that an examination could not be performed and he had to be returned to the jail with a prescription that would alleviate his symptoms sufficiently for a proper examination. He also alleges that as of July 11, 2002, he still had not received an examination. Since filing his amended complaint, Plaintiff has been released from the SFCJ. His most recent communication with the Court (dated September 20, 2005) lists an address in Napa, California.

## DISCUSSION

A.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its' own affidavits or discovery, "set forth specific facts

1  showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The nonmoving
2  party has the burden of identifying, with reasonable particularity, the evidence that
3  precludes summary judgment.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  If
4  the nonmoving party fails to make this showing, "the moving party is entitled to judgment
5  as a matter of law."  Celotex, 477 U.S. at 323.
6  B.     Plaintiff's Claim
7         1.     Applicable Law
8         Plaintiff alleges that Dr. Vivas acted with deliberate indifference to his serious
9  medical needs.  A determination of "deliberate indifference" involves an examination of
10 two elements: the seriousness of the prisoner's medical need and the nature of the
11 defendant's response to that need.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.
12 1992).  A "serious" medical need exists if the failure to treat a prisoner's condition could
13 result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.
14 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A prison official is deliberately
15 indifferent if he knows that a prisoner faces a substantial risk of serious harm and
16 disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511
17 U.S. 825, 837 (1994); see McGuckin, 974 F.2d at 1060.
18        2.     Analysis
19        In its order serving the amended complaint on Dr. Vivas, the Court granted
20 Plaintiff an opportunity to file an opposition to the motion for summary judgment,
21 provided him with the requisite notice regarding the purpose and requirements of an
22 opposition, see Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc), and
23 informed him that his failure to file an opposition "may be deemed to be a consent by
24 Plaintiff to the granting of the motion, and granting of judgment against Plaintiff without
25 a trial.  See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v.
26 Lewis, 18 F.3d 651, 653 (9th Cir. 1994)."  (Order of Partial Dismissal and Service at 8.)
27 Nevertheless, Plaintiff has not filed an opposition, and well more than the time allotted to
28

Order Granting Defendant's Motion for Summary Judgment
P:\pro-se\sj.jf\cr.01\Smykla991.MSJ.Grant.ECK

do so has passed.

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). The Court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. See United States v. Real Property at Incline Village, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. Degen v. United States, 517 U.S. 820 (1996).

In support of her motion for summary judgment, Dr. Vivas has attached the declaration of Dr. Joe Goldenson (docket no. 22), who was Dr. Vivas's clinical supervisor at the SFCJ during the relevant time period, as well as copies of Plaintiff's SFCJ medical records under seal (docket no. 25). The following summary of events is derived from those documents.

Plaintiff was first seen by Dr. Vivas at Jail Health Services (JHS) on May 14, 2001. He did not complain of sinus problems at that time, nor had he complained of such at his JHS intake two weeks earlier. Consistent with the medical issues identified by Plaintiff and with her examination of him, Dr. Vivas ordered treatments for medical conditions unrelated to his sinus problems, including referral to a dentist.

On May 29, 2001, Plaintiff complained to a nurse about pain in his teeth and also reported for the first time a story related to his sinuses: he claimed that during construction work he had done many years before he inhaled materials that continued to flow from his sinuses causing pain in his esophagus and digestive tract. As Plaintiff's complaint was that his digestive tract hurt, and he was already on medication to help his digestive tract, no further medication was provided. The next day he was seen by Dr. Vivas and reported that he was improving. His medications were continued. He had no

1  complaints of sinus problems at that time.

2  On June 20, 2001, Plaintiff again sought medical attention for what he labeled his
3  "sinus" problems, which he now described as fiberglass that he inhaled in the 1970s
4  migrating from his sinuses to his esophagus and through to his duodenum and rectum.
5  The nurse who examined him noted that he was not in acute distress and advised him to
6  return to the clinic if his problem persisted.

7  Another nurse saw Plaintiff on June 25, 2001, in response to a health care request
8  stating that he needed Tylenol for a sinus headache.  The nurse noted that Plaintiff stated
9  that he got the headaches from inhaling some toxic dust while he was tearing down a
10  building about thirty years before.  He stated that dust or asbestos had gone down to his
11  esophagus, then his stomach, and was dragging his intestines and prostrates out.  He
12  further stated that he medicated himself for pain with alcohol because it worked better
13  than Tylenol.  The nursed performed an evaluation and ordered Tylenol for Plaintiff's
14  headache, then referred him to Jail Psychiatric Services for evaluation of "bizarre/
15  incoherent thought process."

16  On July 12, 2001, Dr. Vivas again examined Plaintiff.  She noted that he was
17  tender over his maxillary sinus, a sign of a possible sinus infection.  She diagnosed him
18  with sinusitis/rhinitis, which is inflammation and/or infection of the mucus membranes
19  that line the sinuses and nasal passages.  She prescribed two medications for his sinusitis:
20  Dimetapp (an antihistamine/decongestant) and Septra (an antibiotic).

21  On August 1 and 10, 2001, Plaintiff was seen by a nurse for a toothache and a
22  cold, but had no complaints of problems with his sinuses.  The nurse ordered medication
23  for his cold and referred him to the dentist for his toothache.  He was continued on his
24  medication to treat his sinusitis.

25  On September 3, 2001, Plaintiff again complained of sinus problems to a nurse,
26  but now pointed to his abdomen and said he could feel the pain moving down his lower
27  back and into his prostrate.  On September 11, 2001, Dr. Vivas examined Plaintiff.  She
28

1  noted that he was complaining of a sinus drip to the back of his throat that was causing
2  back pain.  She noted that his sinuses were non-tender at that time.  Her assessment was
3  rhinitis and she added Vancenase, a nasal steroid spray used to reduce inflammation, to
4  his course of treatment for his congestion.  On September 20, 2001, Plaintiff reported that
5  he still had some pain from a recent tooth extraction, but said he felt better and that his
6  pain was subsiding.  He did not report sinus pain at that time.

7  On October 9, 2001, Plaintiff again complained of pain to a nurse, and requested
8  that the be provided Tylenol at night rather than in the day.  His request was granted.
9  That same day, Dr. Vivas reviewed his chart, had a visit with him, and provided a low-
10 sodium diet he requested for reasons unrelated to his complaints about his sinuses.

11 On October 12, 2001, Plaintiff saw Dr. Vivas for a scheduled follow up on his
12 sinusitis.  He requested Tylenol, which he was given, and then complained that his sinus
13 problem was causing him bone, prostate and stomach pain.  He requested an ultrasound of
14 his sinuses, and became verbally abusive when he was not provided one.  The next day,
15 he filed a grievance stating that he no longer wanted to be treated by Dr. Vivas because he
16 was suing her, and that he needed to see a doctor for chest pain.

17 On October 15, 2001, Dr. Vivas saw Plaintiff for a problem unrelated to his sinus
18 condition and referred him to San Francisco General Hospital (SFGH) for further
19 treatment of that medical issue.  A review of the medical records shows that Dr. Vivas did
20 not examine Plaintiff again after that.

21 Over the next several months Plaintiff continued to receive care from JHS medical
22 staff, including treatment of his upper respiratory and sinus problems.  On May 15, 2002,
23 seven months after Plaintiff was last seen by Dr. Vivas, JHS staff decided to refer
24 Plaintiff to an Ear Nose and Throat (ENT) doctor at SFGH for further evaluation.  After
25 trying several different medications and eventually sending Plaintiff for two CT scans, the
26 ENT specialists at SFGH diagnosed Plaintiff with chronic sinusitis with an acute
27 component.  At an appointment with an ENT on April 24, 2003, it was noted that Plaintiff
28

Order Granting Defendant's Motion for Summary Judgment
P:\pro-se\sj.jf\cr.01\Smykla991.MSJ.Grant.ECK

6

1 did not require further follow up with an ENT.

2     Having reviewed the movant's papers, and the declaration and medical records
3 filed in support thereof, the Court finds that they are sufficient to support the motion for
4 summary judgment and do not on their face reveal a genuine issue of material fact. In
5 sum, they reveal that Dr. Vivas was the first one to diagnose Plaintiff's sinus condition,
6 and that she treated him with an antihistamine/decongestant, an antibiotic, and a nasal
7 steroid spray from the time of his diagnosis in July 2001 through October 2001, when
8 Plaintiff refused further treatment by her. This treatment history does not substantiate
9 Plaintiff's claim that Dr. Vivas acted with deliberate indifference to his serious medical
10 needs. Nor do the medical records lend support to Plaintiff's claim that a lack of proper
11 treatment by Dr. Vivas resulted in delayed treatment by the specialists at SFGH.
12 Although it took several months for the SFGH specialists to accurately diagnose
13 Plaintiff's sinus condition, nothing in the record suggests that his diagnosis and treatment
14 were hampered by the treatment which Dr. Vivas had provided several months earlier.

15     Because the pleadings and supporting documents demonstrate that there is no
16 genuine issue as to any material fact, Dr. Vivas is entitled to judgment as a matter of law.
17 Fed. R. Civ. P. 56(c). Accordingly, the motion for summary judgment is granted.

## CONCLUSION

19 For the foregoing reasons the Court orders as follows:

20 Defendant's motion for summary judgment is GRANTED. (Docket no. 21.) The
21 Clerk of the Court shall enter judgment and close the file.

22 The Clerk of the Court also shall administratively terminate docket number 19,
23 which was addressed implicitly by the Court's order of September 29, 2006.

24 This order terminates docket numbers 19 and 21.

25 IT IS SO ORDERED.

26 DATED: 2/13/07

    JEREMY FOGEL
    United States District Judge

Order Granting Defendant's Motion for Summary Judgment
P:\pro-se\sj.jf\cr.01\Smykla991.MSJ.Grant.ECK